## McGOWAN v. LEHIGH VALLEY R. CO.

District Court, S. D. New York.
Feb. 9, 1944.

Gerald Donovan, of New York City (Marcus Borchardt, of Washington, D. C., and Edmond M. Hanrahan, of New York City, of counsel), for plaintiff.

Alexander & Green, of New York City (Maurice Bower Saul, of Philadelphia, Pa., and H. S. Ogden and William R. McDermott, all of New York City, of counsel), for defendant.

GODDARD, District Judge.

This is an action by the plaintiff, an attorney at law, to recover for services alleged to have been rendered to the defendant, Lehigh Valley Railroad Company [hereinafter referred to as Lehigh].

The complaint sets forth two causes of action. The first—in quasi contract; the second—in contract. The case was tried before the court without a jury. The defendant denies that it owes the plaintiff anything; denies that the plaintiff was ever employed to perform any services for it for compensation, and asserts that anything that plaintiff did was done on the distinct understanding that he was not to be entitled to any compensation unless and until he and his associates produced evidence which they represented they had or had access to through Gaston B. Means to establish Germany's responsibility for the explosion at Lehigh's terminal in New Jersey, and it asserts that all that plaintiff and his associates did was done solely for the purpose of making it possible for Lehigh to use Means' evidence. Defendant furthermore contends that neither the plaintiff nor his associates performed any services of value and that nothing that plain-tiff or his associates did had anything whatever to do with the obtaining of the eventual award by the Mixed Claims Commission; the defendant raises certain other defenses which are unnecessary to set forth for present purposes.

On July 30, 1916, early in the morning, a series of explosions at the Lehigh Valley Railroad Company's Black Tom Terminal in New Jersey took place causing great damage to munitions and supplies on the way to countries at war with Germany. Several hundred suits and claims were filed against Lehigh upon the ground that it had been negligent in failing to properly guard the terminal against sabotage when it knew that German agents were engaging in a campaign of destruction of war supplies intended for the enemies of Germany. Lehigh's defense to those actions was that the explosions were not caused by German agents but were caused by spontaneous combustion.

Subsequently, after extensive investigation by Lehigh, Federal, State and local agencies, evidence was obtained tending to show that the explosions had been caused by one Krisoff. Although it was suspected that Krisoff was acting as an agent of the German Government, Lehigh was advised by its counsel that Lehigh did not have legal evidence to establish the fact; therefore, Lehigh was reluctant to file such a claim with the Mixed Claims Commission which, in August, 1922, had been created to pass upon claims of United States citizens for losses sustained as a result of the war with Germany, for fear of jeopardizing its main defense in the suits brought against Lehigh for damages.

Prior to the time within which the Commission was to be officially notified of claims, namely—April 9, 1923, Lehigh notified the Secretary of State of a claim for the destruction of a tugboat and three barges by a German submarine.

In November, 1922, McGowan, who had been retained by the widow of one Leyden as co-counsel with Henry J. Melosh, a lawyer of Jersey City, to prosecute a claim before the Commission for the death of her husband who had been killed in the explosion, called at the office of Lehigh, talked with some member of its legal department, or officer, and said that he wanted to see what Lehigh had found out as a result of its investigation and what action Lehigh was taking with regard to its claim; that he intended to file with the

Commission a claim for Leyden's widow. In March he wrote the following letter:

"March 26, 1923

Lehigh Valley Railroad Co.,
Philadelphia, Pa.

Gentlemen:

I am desirous of calling to the attention of your attorney, providing the matter has not already been attended to, the fact of your being entitled to filing a claim against the Imperial German Government because of the damage suffered by you July 30th, 1916 as a result of the Black Tom Island explosion.

If you are of the opinion from the investigation by the United States District Attorney that there was a violation of American neutrality I would be very pleased to take this matter up for you with the proper officials here, in order to ascertain whether or not the investigation disclosed any activities on the part of German spies with reference to your loss, and prepare your claim because the time in which such claim must be filed with the Commission here, which is deciding all claims arising out of the late European war, will expire April 8th, 1923.

Yours very truly,
Lewis Arthur McGowan
LAMC G:SR."

In reply, Lehigh's general counsel wrote "* * * I beg to advise you that we have given this subject careful consideration heretofore and that counsel has been employed and has made a full investigation of the matter."

On May 24, 1923 a letter was received from Melosh requesting an affidavit as to Leyden's earnings. In reply Barrett, counsel for Lehigh, wrote that Lehigh's Comptroller would prepare an affidavit, and added "I am very greatly interested to know how you are going to prove that the German Government is responsible for Mr. Leyden's death. Information in this respect will be most interesting."

Upon the suggestion of McGowan, Melosh wrote Barrett that they would be glad to inform him "as our claim progresses as to how we are going to prove that Mr. Leyden's death was a consequence of the war."

On July 15, 1923 McGowan wrote to Melosh and enclosed a printed "claimant's statement" McGowan had prepared in connection with a claim against the German Government for the loss of a Kentucky grain elevator which had been destroyed by fire in 1917 and requested Melosh to send it to Barrett and saying "* * * * It has occurred to me if the Judge would care to avail himself of our services in this matter we may be able to make some sort of an arrangement with the Railroad. I positively know that these records exist and I am quite sure that they will show evidence of the conspiracy in the Lehigh Valley case. I know as a matter of fact that the officials of Company spent considerable time on this question, but unfortunately were not able to penetrate through the channel I have pointed out to my client in Kentucky."

The records and evidence referred to concerned records and information said to be in the possession of Gaston B. Means.

In October, McGowan and his associate, C. C. Calhoun had an interview with Means but found that he would not disclose anything except to Judge Timothy T. Ansberry, a former Judge of the Court of Appeals of Ohio and former Congressman from that state, and whose wife owned the house in which Means was living. McGowan and Calhoun went to see Judge Ansberry and prevailed upon him to assist in the matter, and who, after he had talked with Means, thought that Means might be able to produce evidence to prove Germany's responsibility for the explosion, but neither then nor at any time did Means disclose the proof he claimed to have; but Judge Ansberry said he would not approach Lehigh unless Lehigh wished to retain him. Thereupon, McGowan wrote Melosh that he had recently unearthed very important proof that will "beyond all reasonable doubt place the responsibility of the Black Tom explosion upon the German Government", and asking Melosh to make an appointment for McGowan and Calhoun to see Barrett, which was done, and on November 20th McGowan, accompanied by Calhoun, called on Barrett and told him that they had proof which would beyond any doubt show that the German Government was responsible for the Black Tom explosion, and that McGowan said that Judge Ansberry was associated with him, McGowan. Some other matters were discussed. Barrett said that he would like to make some inquiries regarding Judge Ansberry and McGowan and might talk with them again. After learning that Judge Ansberry was a lawyer of high standing, he went to see him and reported to him the interview with McGowan, and that McGowan had told him that he, Mc-

Gowan, had access to proof that would establish Germany's responsibility for the explosion; Barrett also told Judge Ansberry that Lehigh would enter into no financial obligation until he knew what the evidence was and to this Judge Ansberry assented. On December 7, 1923, in an interview between Judge Ansberry, McGowan and Barrett, at Barrett's office, Judge Ansberry said that while Means was a person of uncertain character, he thought Means probably had in some way gotten hold of records and evidence that would prove that the German Government was implicated in the explosion. Barrett repeated that under no circumstances would Lehigh enter any arrangement that involved it in financial obligations until it knew what the evidence was. Barrett also said that Lehigh had filed no claim with the Commission because this would put in jeopardy Lehigh's defense in the suits which were pending against Lehigh. The question of the possibility of filing a claim with the Commission after the Statute of Limitations had expired was also discussed. Judge Ansberry said that he thought that the German Government was anxious to have some of the Alien Property Custodian funds released and would raise no objection to the filing of Lehigh's claim; that he would see Mr. Bonynge, the American Agent, whom he knew well, and see if this could be arranged. Barrett said "We want it strictly understood that any question of compensation to anybody will never arise until two things are accomplished: First, the fact of the existence of evidence that we want is shown to us; second, the fact that such evidence can be presented to the Mixed Claims Commission."

Later, Judge Ansberry had a conference with Loomis, Lehigh's President, and Boles, head of Lehigh's legal department, to whom Barrett had reported his talk with Judge Ansberry, and Judge Ansberry assured Loomis that Lehigh was assuming no financial obligations unless and until they were shown the evidence that Means said he had and were convinced it was sufficient to establish Germany's responsibility. Subsequently, Judge Ansberry informed Barrett by telephone that he had seen Mr. Bonynge, and that Mr. Bonynge had told him that he did not think that the German Government would raise any objection as to the time for filing claims having expired. Mr. Bonynge also informed him that Lehigh had filed a claim for the destruction of a tug and some barges and he thought that that claim would be amended to include the Black Tom loss. On December 11, 1923 Barrett received the following letter:

"George T. Farrell
J. Edward Thomas
Walter E. Barton
William F. Norman
TIMOTHY T. ANSBERRY
Attorney and Counsellor at Law
Southern Building
Washington, D.C.
December 11, 1923

Messrs. E. H. Boles,
R. W. Barrett, Legal Dept.
Lehigh Valley R. R. Co.
New York City.
Gentlemen:

Pursuant to our conversation of Saturday we took up with the Mixed Claims Commission the question of your eligibility to prosecute claim for damages by reason of the Black Tom explosion of July 30, 1916, on behalf of your company. We learned that the Lehigh Valley Railroad Company had filed a claim No. 11,333, with the Commission for $669,175.73 resulting from submarine warfare. We are of the opinion that the Commission will hold that this gives them jurisdiction sufficient to embrace the Black Tom matter. However, it will be necessary to supplement the claim above referred to by a letter from your company addressed to the Mixed Claims Commission, Edmonds Bldg., Washington, D. C., attention of Hon. Robert W. Bonynge, American Agent.

May we not suggest to you that a great deal depends upon the phraseology of this letter and that you carefully read Exhibit C to be found on page 57 of the report of Robert C. Morris, Agent of the United States before the Mixed Claims Commission, copy of which was handed to Judge Barrett by Mr. McGowan on Saturday. On second thought if you will write a letter authorizing us to act on your behalf we believe that we can cover the situation. If you conclude to prepare the letter yourself, we suggest that you send it to us and we will file it, and in the letter transmitting it, authorize us to act on your behalf with reference to your claim before the Commission, with the understanding that you are not thereby creating any liability so far as we are concerned as to fees or compensation of this service, it being understood that before any liability of this character attaches, we will enter into a formal contract covering the situa-

tion, and of course we will not do this until after the jurisdictional question has been settled.

We feel confident that the Commission will take jurisdiction of this claim. If they do not do so by virtue of Claim No. 11,333, we think that there are other ways of attaining this object, which we need not discuss at this time.

We are confident that we have access to proof sufficient to establish the responsibility of the German Government for this explosion, which will result in an award by the Commission for the full amount of your loss. The method of obtaining this proof we discussed with you in our conferences on Friday and Saturday.

As to the details of this proof, when we have the jurisdictional question settled we will write you again. Meanwhile, Mr. McGowan will be in New York Thursday morning. He will call you over the 'phone, and if you desire anything further which is not covered in this letter, he will be glad to confer with you.

Please give this matter your immediate attention.

> Very truly yours,
> T. T. Ansberry
> C. C. Calhoun
> Lewis A. McGowan".

TTA:L

On December 13th Barrett wrote to the Solicitor of the Railroad Administration which had operated Lehigh during the war inquiring about the claim which had been filed for the loss of the tug and barges. In response to a telephone conversation and to the letter of December 11th, Barrett wrote to Judge Ansberry this letter—

> "December 17, 1923
> 9532.1 8-A

Timothy T. Ansberry, Esq.,
Southern Building,
Washington, D. C.
Dear Sir:

Pursuant to a conference with Mr. McGowan, I wrote General Solicitor McLaughlin of the Railroad Administration asking him in reference to Claim 11,333, Lehigh Valley Railroad Company v. German Government. I was very much chagrined to receive a reply from him stating that this claim was filed by myself on December 28, 1918. The file had been misplaced in our office owing to the fact that it was used in a settlement with the Railroad Administration.

I am attaching hereto a copy of the claim, together with a copy of my letter of transmission to Hon. Robert Lansing, Secretary of State. I also have a copy of the Secretary's notice of the claim. The papers explain themselves. It is, therefore, apparent that we have a perfectly good claim already on file with the Mixed Claims Commission. I assume that we can amend it to include all of our Black Tom Explosion claims, but before spending any money in connection with the matter we, of course, want to know that our amended claim has been accepted and is on file with the Mixed Claims Commission. This, I am sure you will understand, is a prerequisite to any negotiations between you and ourselves in connection with this matter.

Pursuant to the suggestion contained in your letter of December 11, and my further conference with Mr. McGowan, it seems to me advisable to have you draft an amendment to this claim for the purpose of including in it all of our Black Tom Explosion claims. I, of course, have a list of these claims showing all of the payments thus far made by us; also all suits now pending against us. If you will give me a draft of the form of amendment you think we ought to file, I will file it as I am attorney of record in this particular matter. It is my understanding that we will incur no expense in connection with the amendment of the claim, it being understood that its being filed is a necessary preliminary matter in connection with our further negotiations.

> Very truly yours,
> R. W. Barrett
> General Solicitor.

bk
P.S. I also enclose herewith a note to the Mixed Claims Commission asking that you be allowed the privilege of consulting the files in connection with claim 11,333.

> R. W. B."

Enclosed with the letter was one to the Commission requesting that Judge Ansberry and McGowan be permitted to inspect the Commission's files relating to Lehigh's tug boat claim.

On February 12, 1924 Judge Ansberry wrote to Barrett that he was taking a holiday in Florida and in his absence to take up any matters with Judge Farrell in his office. In Judge Ansberry's absence his associate, Judge Farrell, replied that if Barrett would forward the data they would

prepare the amendment and submit it to Barrett for his approval. On December 27th Barrett wrote to Judge Farrell saying that he, Barrett, had drawn the proposed amendment himself and on January 4, 1924 went to Washington and showed it to Judge Farrell and McGowan and then they submitted it to Mr. Bonynge, the American Agent, who examined it and suggested that a petition ought to be filed with it. Later, after including a paragraph recommended by counsel who were defending the civil suits, and preparing a petition, it was printed and verified. Although McGowan claims that proposed amendment and the petition were entirely his idea, this is open to doubt.

On January 24, 1924 McGowan called upon Barrett and said that as he was going to Washington he would take the petition and amended claim, and the next day he filed them with Mr. Bonynge, the American Agent to the Commission, but it was not presented to the Commission until 1927 as an exhibit in connection with a memorial.

Barrett testified that on May 12, 1924 he went to Washington for a conference with Judge Ansberry and Judge Ansberry told him that as a result of a further talk with Means and things which he observed while at Means' house, he had become convinced that Means did not have and could not produce any evidence to connect the German Government with the explosions and that he was going to withdraw from the case and that he would have McGowan do so if he had entered a notice of appearance; later he said that he ascertained that McGowan had not done so so did not speak to him about it. The testimony of Judge Ansberry confirmed this conversation. On May 31, 1924 Judge Ansberry wrote that he was withdrawing from the case. Barrett testified that after Judge Ansberry had had his conference with Means he, Barrett, McGowan and Calhoun talked over the situation and that McGowan said "I thought we had the evidence. I thought we had something good, but it is all over now. * * * You dont owe me anything except you do owe it to me to do your best now, and I want you to win for Mrs. Leyden."

McGowan denies that he made any such statements. However, no further services were rendered by McGowan in prosecuting Lehigh's claim.

After three years of unsuccessful negotiations between the United States and Germany for the settlement of this and other sabotage claims, counsel for Lehigh prepared and there was filed with the Commission on March 16, 1927 a memorial with many exhibits. Germany answered denying that the explosions were caused by German agents. For upwards of eleven years Lehigh's claim was vigorously prosecuted; many briefs were prepared, several lengthy oral arguments were made by Lehigh's counsel before the Commission, and a number of opinions were rendered by the Commission. By the Settlement of War Claims Act of 1928, 50 U.S.C.A. Appendix, § 9 et seq., and the Executive Agreement between the United States and Germany of December 31, 1928, 45 Stat. 2698, jurisdiction of the Commission was extended to include claims filed prior to July 1, 1928. In none of these did McGowan participate or assist in any way. Finally evidence was obtained by the representatives of Lehigh [not McGowan] from Admiral Sir Reginald Hall of the British Navy which established that the Black Tom explosions were caused by agents of Germany. In June, 1939 a decision was rendered in favor of Lehigh and in October of that year an award was made to Lehigh of $9,900,322.77 with interest from January 5, 1920 at five percent per annum.

Sometime in 1939 or 1940, after the Commission had rendered its decision in favor of Lehigh, McGowan suggested to Judge Ansberry that he join him in an effort to obtain a fee from Lehigh, which Judge Ansberry declined to do.

■ McGowan, in his complaint and bill of particulars, bases his claim under the First Cause of Action on the letters of December 11 and December 17, 1923, and an alleged oral employment by Barrett on December 28, 1923. These seem inconsistent, for the letters relate to an arrangement with Ansberry, McGowan and Calhoun, while the alleged oral arrangement between McGowan and Barrett is an individual one with McGowan. It is clear from these letters that Lehigh was not creating any liability as to fees or compensation for anything done in connection with the amended tug boat claim. The statement in the letter of December 11th that "we are confident that we have access to proof sufficient to establish the responsibility of the German Government for this explosion. * * *" was not substantiated, for they never did produce any such proof.

528

No claim for compensation can be founded on these letters.

■ Insofar as McGowan's claim is based upon the oral agreement with Barrett on December 28, 1923—when, according to McGowan Judge Ansberry had withdrawn from the case—employing him, McGowan individually to continue preparing the amendment to the tug boat claim, to present the petition and to prosecute the case to the extent of putting Lehigh in the same position as other claimants who had timely filed their claims; and to pay McGowan in the event of a recovery after the jurisdictional question was settled, Barrett denies that he made any such agreement. According to McGowan the occasion for this alleged interview with Barrett was that Judge Ansberry had told McGowan that he had withdrawn from the case and that he, McGowan, wanted to know where he stood. Judge Ansberry denies that he had told McGowan that he had withdrawn and it is apparent from the letters and evidence that he had not. McGowan admitted on his examination before trial that when he and Borchardt on March 29, 1940 presented his claim for compensation, nothing was said about any agreement with Barrett in December, 1923, nor was it referred to in Borchardt's letter of April 17, 1940 to Saul setting forth McGowan's claim for compensation. The correspondence previous to this date and after, and all the circumstances and the inferences drawn from them, together with the testimony of Barrett and Judge Ansberry, are more convincing than McGowan's testimony, and I find that no such contract as McGowan alleges was entered into, and that McGowan rendered no services for which he is entitled to compensation.

■ The Second Cause of Action is founded upon an oral contract alleged to have been entered into about the middle of February, 1924 by McGowan and Loomis, the then President of Lehigh in which, according to McGowan, Loomis agreed to pay McGowan for his services at least three percent of any award collected. This arrangement was made according to McGowan with him individually as he says that at the time Judge Ansberry had retired from the case.

The claim is based upon an alleged conversation between McGowan and Loomis which took place when McGowan called at the Lehigh's office in New York and Barrett, being out, he saw Loomis who,

according to McGowan, told McGowan "that he would be paid at least three percent for getting the claim before the Commission and doing whatever Mr. Loomis felt was necessary for him to do in the future."

Loomis died in July, 1937 and the only evidence in support of this claim is the testimony of the plaintiff himself; and after hearing the testimony and considering all the circumstances, the probabilities, and reasonable inferences to be drawn from the known facts, I do not think that plaintiff has established the making of the alleged contract by the convincing proof required.

In the first place in no letter—and there were a number of them—nor in any memoranda or conversations with any other representative of Lehigh is there any suggestion of such an agreement having been entered into. Judge Ansberry testified that he had never heard of it, as did all the witnesses except McGowan. If such an arrangement had been agreed upon McGowan was not exactly the type of person to have overlooked the advisability of having it in writing, an exchange of letters or some other form. It was not until 1940, after the award to Lehigh had been made, that plaintiff asserted that such a contract had been made except in a conversation which McGowan said he had with Barrett in October, 1939, which Barrett denies.

On March 29, 1940 McGowan with his attorney, Borchardt, called upon Barrett at Lehigh's office in New York and made a claim for his services which was emphatically denied and he was referred to Maurice B. Saul, of Philadelphia, who was handling all claims against Lehigh for compensation arising out of the Black Tom case, and on April 17, 1940 Borchardt wrote to Saul presenting McGowan's claim for compensation.

On McGowan's examination before trial he testified that Borchardt at that conference told Barrett that Loomis had advised McGowan that Lehigh would pay him at least three percent for his services. At the trial McGowan testified that at this conference Borchardt told Barrett about this agreement with some official of Lehigh whose name he could not recall. Barrett denies that any such promise or agreement was mentioned at this conference, and Mr. McCloy, now Assistant Secretary of War, who was present at the conference, testified that he recalled no such statement. Borchardt did not testify.

In the brief prepared and submitted after trial, the following startling statement [referring to that conference] appeared: "There was no mention of an agreement with Mr. Loomis or anyone, since Mr. Barrett shut the door to any talk about fees. * * *" [p. 34]

Furthermore, in a seven page letter of April 17, 1940 from McGowan's attorney, Borchardt, to Lehigh's attorney, Saul, making a claim for compensation for McGowan's services written after McGowan said he had given all the facts to his attorney and which McGowan says he cannot now recall whether he read before sending but which he said he approved of and which purports to set forth in detail the terms of McGowan's employment and services, there is no mention of any promise by Loomis or anyone to pay McGowan at least three percent of the award. This, it seems to me, creates a persuasive inference that no such agreement existed, for if that were the fact, it is scarcely conceivable that McGowan and his attorney would have overlooked or failed to urge and rely upon such a crucial element of his claim. Moreover, that letter says "No formal contract was entered into between the Lehigh Valley Railroad Company and Mr. McGowan at the time of rendering the above mentioned services, as it was specifically understood and agreed between such company and Mr. McGowan that no payment whatever would be made to him for said services, nor would any contract or stipulation be entered into for any amount to which Mr. McGowan may be entitled, until there had been a successful determination of the matter of said claim by the Lehigh Valley Railroad Company". Also the contention that Loomis had agreed to pay at least three percent of the recovery is incompatible with McGowan's own testimony that in March, 1928 Loomis said that he was going to have fees fixed by the American Commission under the provisions of the Settlement of War Claims Act, and it does not appear that McGowan then protested or said anything about the alleged promise to pay him at least three percent of the recovery.

As previously stated it is established by reliable testimony and by the correspondence that Judge Ansberry had not retired from the case in February, 1924. Judge Ansberry was active in the matter at this time and did not withdraw until May of that year. McGowan is clearly in error as to this. This being so, it is quite im-

probable that Lehigh, under the condition of affairs, would have entered into such an agreement with McGowan individually unbeknown to Judge Ansberry, whom Lehigh regarded as the more important member of the plaintiff's group.

The complaint is dismissed.

Defendant may submit proposed findings of fact and conclusions of law in accordance with the above on ten days notice.